**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:24-cv-02439-RMR-NRN

JOSEPH and SERENA WAILES, et al.,

Plaintiffs,

v.

JEFFERSON COUNTY PUBLIC
SCHOOLS, et al.,

Defendants.

---

**PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**

**Oral Argument Requested**

---

# TABLE OF CONTENTS

MOTION ........................................................................................................... 1

BACKGROUND AND FACTS ........................................................................... 1

LEGAL STANDARD ......................................................................................... 4

ARGUMENT ..................................................................................................... 4

I.     Plaintiffs have standing........................................................................... 4

II.    Plaintiffs are likely to succeed on the merits of their claims. ................................ 6

    A.    Jeffco's policy violates Plaintiffs' religious exercise. ........................................ 7

        i.    Jeffco's policy penalizes Plaintiffs' religious exercise. .............................. 8

        ii.    Jeffco's policy is not neutral or generally applicable. .................................. 9

            a.    Jeffco's policy does not treat transgender students and students
with religious and privacy concerns equally. ................................... 9

            b.    Jeffco's policy allows for individualized assessments. .................. 10

        iii.    Jeffco's policy burdens hybrid rights. ....................................................... 11

    B.    Jeffco's policy violates Plaintiff Students' right to bodily privacy.................... 11

    C.    Jeffco's policy violates Parent Plaintiffs' fundamental right to direct their
children's religious upbringing and protect their bodily privacy...................... 12

    D.    Jeffco's policy fails strict scrutiny................................................................... 13

        i.    Jeffco lacks a compelling interest to justify the harms. ............................ 14

        ii.    Jeffco's policy is not narrowly tailored....................................................... 14

III.    Plaintiffs' likelihood of success on their constitutional claims determines the
remaining factors. ................................................................................... 15

CONCLUSION ................................................................................................. 15

**CERTIFICATE OF SERVICE** ........................................................................ 17

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Axson-Flynn v. Johnson,*
   356 F.3d 1277 (10th Cir. 2004) ........................................................................ 10, 11

*Ballard v. United States,*
   329 U.S. 187 (1946) ................................................................................................ 12

*Burwell v. Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014) .................................................................................................. 4

*Canedy v. Boardman,*
   16 F.3d 183 (7th Cir. 1994) .................................................................................... 11

*Carroll Independent School District v. U.S. Department of Education,*
   No. 4:24-cv-00461, 2024 WL 3381901 (N.D. Tex. July 11, 2024) ........................ 10

*Carson v. Makin,*
   596 U.S. 767 (2022) .................................................................................................. 8

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993) ................................................................................................ 10

*City of Philadelphia v. Pennsylvania Human Relations Commission,*
   300 A.2d 97 (Pa. Commw. Ct. 1973) ..................................................................... 12

*Cumbey v. Meachum,*
   684 F.2d 712 (10th Cir. 1982) ................................................................................ 11

*Dobbs v. Jackson Women's Health Organizaton,*
   597 U.S. 215 (2022) ................................................................................................ 12

*Doe v. Luzerne County,*
   660 F.3d 169 (3rd Cir. 2011) ................................................................................. 11

*Employment Division, Department of Human Resources of Oregon v. Smith,*
   494 U.S. 872 (1990) ....................................................................................... 7, 8, 10

*Espinoza v. Montana Department of Revenue,*
   591 U.S. 464 (2020) .................................................................................................. 7

*Fulton v. City of Philadelphia,*
   593 U.S. 522 (2021) ................................................................................. 9, 10, 11, 13

*Hobby Lobby Stores, Inc. v. Sebelius,*
   723 F.3d 1114 (10th Cir. 2013) ................................................................. 4

*Kennedy v. Bremerton School District,*
   597 U.S. 507 (2022) ........................................................................... 7, 8, 9

*Meyer v. Nebraska,*
   262 U.S. 390 (1923) ................................................................................ 13

*Mirabelli v. Olson,*
   691 F. Supp. 3d 1197 (S.D. Cal. 2023) .................................................... 13

*Pierce v. Society of Sisters,*
   268 U.S. 510 (1925) ............................................................................ 7, 13

*Reed v. Town of Gilbert,*
   576 U.S. 155 (2015) ................................................................................ 14

*Reno v. Flores,*
   507 U.S. 292 (1993) ................................................................................ 12

*Torres v. Wisconsin Department of Health & Social Services,*
   859 F.2d 1523 (7th Cir. 1988) ................................................................. 12

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
   582 U.S. 449 (2017) .................................................................................. 8

*Troxel v. Granville,*
   530 U.S. 57 (2000) ............................................................................ 12, 13

*United States v. Playboy Entertainment Group, Inc.,*
   529 U.S. 803 (2000) ................................................................................ 14

*United States v. Virginia,*
   518 U.S. 515 (1996) ................................................................................ 11

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ............................................................................ 12, 13

*Wisconsin v. Yoder,*
   406 U.S. 205 (1972) .................................................................................. 7

**<u>Statutes</u>**

Act of Mar. 24, 1887, ch. 103, § 2, 1887 Mass Acts, 668, 669 ...................... 17

**Other Authorities**

Ferdinand Schoeman, *Adolescent* Confidentiality, *and Family Privacy*, in
    Person To Person 213 (George Graham & Hugh Lafollette eds., 1989)................. 18

Samuel T. Summers, Jr., *Keeping Vermont's Public Libraries Safe*,
    34 Vt. L. Rev. 655 (2010)....................................................................... 18

**Constitutional Provisions**

U.S. Const. amend. I .................................................................................. 10

U.S. Const. amend. XIV ......................................................................... 10, 19

## MOTION

Based on new evidence, including the testimony of new plaintiffs, Plaintiffs renew their request under Fed. R. Civ. P. 65(a) for an order preliminarily enjoining Jefferson County Public Schools (Jeffco) from assigning Student Plaintiffs to share bedrooms and shower facilities with students of the opposite sex on upcoming overnight school trips.

## BACKGROUND AND FACTS

The Court denied Plaintiffs' first motion for lack of standing, based on Jeffco's representation that it "freely grants accommodations to all." Def. MPI Response at 18. But Jeffco hasn't done that for Plaintiffs—as the Brinkmans can now also attest. Movant's Appx., p. 1–4 – Brinkman's Decl. So Plaintiffs still need injunctive relief.

Since the Court's order, the record has grown on this point. Each Plaintiff family has asked Jeffco to accommodate their students and been denied. Am. Comp. ¶¶ 287, 295–319 (Waileses); ¶¶ 320–328 (Rollers);  Movant's Appx., p. 20–21 – Perlman Email (Perlmans). And now the Brinkmans supply the most recent example. Their daughter, A.G.B., attended Outdoor Lab from January 28–31, 2025. Movant's Appx., p. 1 – Brinkman Decl. Ahead of the trip, the Brinkmans contacted the Outdoor Lab principal, as Jeffco directed, to ask that their daughter be roomed only with students of the same sex. *See* ECF 29-1 at 23. The principal did not respond. Movant's Appx., p. 1–2 – Brinkman's Decl. So they made the same request to others in charge of the trip—eight more requests in total contacting administrators, from the trip leader to the superintendent, seeking assurance that A.G.B. would not be roomed with a student of the opposite sex. Am. Compl. ¶¶ 331–347, 367. This included emails to the Jeffco Board of Education, the main Jeffco email account, Superintendent Wes Paxton, and Windy Peak Principal Jeremy Brasher. *Id.* ¶¶ 331. No one responded. Am. Compl. ¶¶ 331–347, 367.

1

Finally, Ms. Brinkman emailed Jeffco's counsel, Julie Tolleson. Ms. Tolleson answered but said their only option was to remove A.G.B. from Outdoor Lab every night and bring her back in the morning. *Id.* ¶ 342. After Ms. Tolleson's email, Superintendent Paxton responded with the same suggestion—have her attend as a day student only or accept Jeffco may room her with a student or counselor of the opposite sex. *Id.* ¶ 368.

Attending as a day student meant A.G.B. would miss the overnight activities. The logistics of that arrangement would also burden the family significantly. But sending her on the trip meant Jeffco could room her with a student of the opposite sex, and her parents wouldn't know until she got home. So the Brinkmans sent one more email and then spoke with their principal and the Outdoor Lab principal. Movant's Appx., p. 16 – Brinkman Email. The Brinkmans renewed their request that their daughter "be placed in a cabin with only female students, counselors, and interns." *Id.* But both their principal and the Outdoor Lab principal reiterated that the only option was to leave every night; they could not provide assurances about room assignments. *Id.*, p. 3–4 – Brinkman's Decl. Left with no choice but to accept the penalty of picking A.G.B. up every evening to sleep elsewhere and returning her early every morning, the Brinkmans made arrangements to do that. But since Outdoor Lab was too far away to take her home every night, they rented an Airbnb, and Ms. Brinkman took time off of work to stay with her. *Id.*, p. 4. A.B.G. missed an important part of her trip and suffered embarrassment and stigmatization as other students asked her why she had to leave every night. *Id.*, p. 4–5.

The Rollers and Perlmans also asked Jeffco for arrangements for their children to ensure that they are not roomed with opposite-sex roommates on overnight trips. Am. Compl. ¶¶ 320–328; Movant's Appx., p. 20–21 – Perlman Email. Jeffco refused, simply referring both families back to their policy and leaving them with no options other than to

miss significant portions of the trip or just stay home altogether. Am. Compl. ¶ 328; Movant's Appx., p. 22–23. And the Waileses are now facing the same harm. Movant's Appx., p. 7–8 – Wailes' Decl. They have been trying for over a year to obtain assurances that Jeffco will not room B.W. and G.W. with the opposite sex on their upcoming D.C. trip, like they did with D.W. in 2023. Am. Compl. ¶¶ 287, 298, 306–311. As that trip approaches, payments continue, and planning increases. *Id.* ¶¶ 317–319. They have already spent thousands of dollars on the trip and have four more upcoming payments. Movant's Appx., p. 7–8 – Wailes' Decl. And they now know what happened to the Brinkmans when they relied on Jeffco's "promise" to accommodate—they were penalized. Indeed, the only alternative Jeffco has suggested to the Waileses is that they pay more for a single room. Def. MTD at 8. But that would also be a choice that would stigmatize their children and take part of the experience from them. Movant's Appx., p. 8 – Wailes' Decl. In contrast, transgender students pick the sex of their roommates for free, ensuring that they can fully participate at no added social or monetary cost.

Yet evidence now shows that Jeffco once had a rooming "protocol" for transgender students that ensured all students could fully participate and "both persons or parties" felt "comfortable." Movant's Appx., p. 12–15 – Former Rooming Protocol (redacted to remove personal and student information). But it scrapped it. And it once guaranteed that any student who desired "increased privacy" would be provided "a reasonable accommodation, which may include a private room" at no added cost. Am. Compl. ¶ 268. But it cut that, too. ECF No. 33 at 3. So now, Jeffco only guarantees these benefits to transgender students, while denying or charging religious students for the same educational benefits.

Now too, Jeffco suggests that it can't accommodate Plaintiffs' requests because it doesn't know students' sex. *Id.* at 2. That wasn't true under the prior protocol, and it

isn't true now. All parents must submit a birth certificate listing their children's sex to enroll them in the district, and it remains visible in a student's permanent file. Am. Compl. ¶ 278–284. If a parent legally changed their child's birth certificate, they would have to submit it to Jeffco, giving it knowledge of the student's sex or transgender status. In any event, Jeffco can agree to room Student Plaintiffs with those the parties know are of the same sex. Because it won't, an injunction is still needed.

## LEGAL STANDARD

Plaintiffs seek an order preserving the last "uncontested status" between Plaintiffs and Jeffco—which was before Jeffco started rooming students based on gender identity rather than sex. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001). So Plaintiffs need only show: (1) a likelihood of success on the merits; (2) a likely threat of irreparable harm; (3) the alleged harm outweighs any harm to Jeffco; and (4) the injunction will be in the public interest. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). The likelihood of success factor is usually "determinative" when an injunction is needed to protect the exercise of a constitutional right. *Sebelius*, 723 F.3d at 1145. It is here.

## ARGUMENT

### I.    Plaintiffs have standing.

If any of the Plaintiffs has standing, the Court should proceed to the merits. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52, n.2 (2006) ("the presence of one party with standing is sufficient"); *accord Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 29, n.1 (10th Cir. 2013). To establish standing, a plaintiff "must demonstrate a substantial risk that, in the near future, they will suffer an injury . . . traceable to a Government defendant and redressable by the injunction." *Murthy v.*

*Missouri*, 603 U.S. 43, 49–50 (2024). Here, there is past harm, present harm, and a substantial risk of future harm traceable to Jeffco's policy. So standing is met.

**Injury in fact.** This element is met when evidence of past harm accompanies evidence of "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). "An allegation of future injury" alone "may suffice if the threatened injury is 'certainly impending,' or there is a substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). And when constitutional harms are at issue, the test is leniently applied. *Ward v. Utah*, 321 F.3d 1263, 1266-67 (10th Cir. 2003). Plaintiffs pass the test at every level.

There is evidence of past harm. Without parental consent, Jeffco assigned D.W. and B.R. to share overnight accommodations with opposite-sex students. Am. Compl. ¶¶ 101–103, 185–187. And the Brinkmans testify to how Jeffco harmed them by refusing to accommodate A.G.B. Movant's Appx., p. 4 – Brinkman's Decl.

There is evidence of present harm. Jeffco's policy is subjecting Student Plaintiffs to unequal treatment. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458 (2017) (The Free Exercise Clause "protects religious observers against unequal treatment."). It affords protections to transgender students that it doesn't afford Student Plaintiffs. And it is pressuring Plaintiffs to abandon their religious and privacy concerns. Am. Compl. ¶ 395; Movant's Appx., p. 4 – Brinkman's Decl., p. 8 – Wailes' Decl. Plaintiffs are "directly affected" by the unequal policy "and practices against which their complaints are directed." *Awad*, 670 F.3d at 1121.

There is a substantial risk of future harm. Jeffco will not commit to only rooming Student Plaintiffs with students known to be of the same sex. Nor will it freely provide accommodations that align with Plaintiffs' religious and privacy concerns on upcoming trips including D.R.'s HOSA trip, G.W. and B.W.'s Washington DC trip, and M.P.'s

basketball trips. Movant's Appx., p. 1–4 – Brinkman's Decl.; *Id.*, p. 7–8; Am. Compl. ¶¶ 382–383. So Plaintiffs face substantial risk that Jeffco will violate their constitutional rights. Am. Compl. ¶¶ 379, 390–396.

   *Traceability.* This element requires a "causal connection" between the injury and challenged conduct. *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997). Because Jeffco has the authority to enforce the challenged policy and can prevent the injury, "traceability" is established. *Susan B. Anthony List*, 573 U.S. at 157–58; *Cressman v. Thompson*, 719 F.3d 1139, 1145 (10th Cir. 2013). Jeffco can agree not to room Student Plaintiffs with the opposite sex. But it won't, so traceability is established.

   *Redressability.* To satisfy this element, Plaintiffs must show that an injunction would reduce the "risk of [future] harm . . . *to some extent*." *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (emphasis added); *accord Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012). So they need not prove that an injunction will, as this Court put it, "eliminate any chance" of harm. ECF No. 33 at 14. Because an injunction would reduce the risk of Jeffco rooming Student Plaintiffs with the opposite sex *to some extent*, this element is met. An injunction would also cause Jeffco to reconsider how it accommodates students' religious and privacy concerns—which is "enough for standing." *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251, 1262 (10th Cir. 2024).

## II. Plaintiffs are likely to succeed on the merits of their claims.

   Plaintiffs are likely to succeed on the merits because Jeffco's policy (A) burdens their religious exercise, (B) violates Student Plaintiffs' bodily privacy rights, and (C) infringes Parent Plaintiffs' right to direct their children's care, upbringing, and education. Any of these infringements trigger strict scrutiny—which the policy cannot survive.

**A. Jeffco's policy violates Plaintiffs' religious exercise.**

The Free Exercise Clause protects "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990)). For Parent Plaintiffs, this free exercise right also includes the right to raise their children according to their religious beliefs, including their beliefs about the immutability of sex, bodily privacy, interactions with the opposite sex, and sexual modesty. *E.g.*, *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 486 (2020); *Wisconsin v. Yoder*, 406 U.S. 205, 213–14 (1972); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925).

Parent Plaintiffs have sincerely held religious beliefs about their children sharing a bedroom or shower facility with unrelated members of the opposite sex. Am. Compl. ¶¶ 49–59, 143–150 208–213, 238–257. They have a religious duty to protect their children's bodily privacy, to teach them their beliefs, and to instruct their children to act consistent with their beliefs. *Id.* So they teach their children not to undress, shower, or share overnight accommodations with the opposite sex. *Id.* ¶ 462.

Student Plaintiffs share their parents' beliefs about sex, gender, bodily privacy, and modesty. *Id.* ¶¶ 54, 150, 213, 250, 252. Sharing bedrooms and shower facilities with the opposite sex would go against their faith. *Id.* And because Plaintiffs do not believe people can change their sex, it violates their beliefs for Student Plaintiffs to room with opposite-sex students regardless of their gender identity. *Id.* ¶¶ 538–39.

Jeffco's policy burdens Plaintiffs' religious exercise by requiring Student Plaintiffs to accept the risk of Jeffco assigning them to a bedroom or showering facility with the opposite sex. It forces Student Plaintiffs to act in a way that conflicts with their faith. And it strips Parent Plaintiffs' decision-making authority and prevents them from protecting

their children's bodily privacy as their beliefs require. Worse, it conditions access to educational opportunities on Plaintiffs' willingness to abandon and violate their religious beliefs or suffer stigma, embarrassment, and monetary costs to avoid such harm. Because Jeffco will not commit to rooming Student Plaintiffs with only those whom the parties know to be of the same sex, Jeffco is placing impermissible pressure on Plaintiffs to abandon their religious exercise.

Because of this harm and the risk of future harm, Jeffco's policy is subject to strict scrutiny for three reasons. First, it penalizes religious exercise by preventing Student Plaintiffs from equally enjoying the public benefits of overnight school trips. *Carson v. Makin*, 596 U.S. 767, 778–79 (2022). Second, it provides preferential treatment for students who identify as transgender and does so on a case-by-case basis. *Kennedy*, 597 U.S. at 526. Third, it infringes hybrid rights. *Smith*, 494 U.S. at 881.

### i.    *Jeffco's policy penalizes Plaintiffs' religious exercise.*

The Free Exercise Clause "protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson*, 596 U.S. at 778 (citation omitted). Jeffco cannot "exclude[] religious observers from otherwise available public benefits" just because they are religious or do religious things. *Id*. But Jeffco only gives Plaintiffs two options—miss out on or limit Student Plaintiffs' participation in activities that require overnight stays *or* let Jeffco decide whether they share bedrooms and shower facilities with the opposite sex. With the first option, their "freedom [of religion] comes at the cost of automatic and absolute exclusion from the benefits of a public program for which the [families are] otherwise fully qualified." *Trinity*, 582 U.S. at 462. With the second, they violate their religious beliefs. By imposing that choice, Jeffco "penalizes the free exercise of religion" and engages in religious discrimination "odious to our Constitution." *Carson*, 596 U.S. at 779–80 (cleaned up). Even if a person is not

8

entitled to a benefit, the government "may not deny [it] to [him] on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

### ii.    Jeffco's policy is not neutral or generally applicable.

A policy is not neutral or generally applicable if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way or if it provides a mechanism for individualized exemptions." *Kennedy*, 597 U.S. at 526 (cleaned up). Jeffco's policy does both.

### a.    Jeffco's policy does not treat transgender students and students with religious and privacy concerns equally.

The policy gives preferential treatment to transgender students. Am. Compl. ¶ 267 ("under no circumstance shall a student who is transgender be required to share a room with students whose gender identity conflicts with their own."). Transgender students can decide with which sex they  room. *Id.* ¶¶ 269–73. And Jeffco does so without revealing any other students' personal information. Yet there is no reciprocal policy for students who, for religious or privacy reasons, do not want to share a room with students whose *sex* "conflicts with their own." *Id.* ¶¶ 267–68. Jeffco assigned D.W. and B.R. to room with opposite-sex students without notice, parental consent, or an opportunity to secure a sex-separated option. *Id.* ¶¶ 109, 116, 185–192, 276, 286.

That policy is neither neutral nor generally applicable. It "prohibits religious conduct while permitting secular conduct" that undermines the same purpose. *Fulton v. City of Phila.*, 593 U.S. 522, 534 (2021). To start, Jeffco says in a FAQ document that students can be exempted from the policy for safety concerns. Movant's Appx., p. 18 – FAQ Document. But Jeffco does not exempt students with privacy or religious concerns. It also allows transgender students choices not afforded religious students. Am. Compl. ¶386. It is hard "to see how affording extra privileges to the transgender student based

9

on subjective feelings of discomfort while simultaneously excluding the non-transgender student for similarly subjective feelings is something other than invidious discrimination." *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-00461, 2024 WL 3381901, *4 (N.D. Tex. July 11, 2024). "The Free Exercise Clause protects religious observers against [such] unequal treatment." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993) (cleaned up).

### b. Jeffco's policy allows for individualized assessments.

Jeffco's policy entails a system of individualized assessments. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1297 (10th Cir. 2004). Under the policy, Jeffco can decide on an individualized basis whether to room a student who identifies as transgender with students of the same or opposite sex based on what the transgender student prefers. Am. Compl. ¶¶ 266, 269–75. A policy that allows Jeffco to consider the particular reasons for allowing certain individuals to room with one sex or the other has all the hallmarks of what *Lukumi*, 508 U.S. at 522*,* and *Fulton*, 593 U.S. at 533, described as a system of individualized assessments. In such a system, the government "may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Lukumi*, 508 U.S. at 537 (quoting *Smith*, 494 U.S. at 884). Yet that is what Jeffco is doing, as illustrated by the Rollers' and Waileses' situations. There, Jeffco made individualized assessments to place a female student who identified as "non-binary" in B.R.'s male-only cabin, and a male student in D.W.'s hotel room. Am. Compl. ¶¶ 274–75*,* ¶ 120. And if a student has a health issue, Jeffco makes an individualized assessment and offers an accommodation as well. Movant's Appx., p. 19 – Outdoor Lab Accommodations.

But when Plaintiffs have asked that their children be roomed only with students of the same sex because of their religious beliefs and privacy concerns, Jeffco refused

to provide an accommodation similar to what they granted B.R.'s counselor and D.W.'s roommate. *Id.* ¶¶ 8, 11, 314, 328, 334–342, 345, 370. Because Jeffco "may not refuse to extend that system [of exemptions] to cases of 'religious hardship' without compelling reason," *Fulton*, 593 U.S. at 534 (citation omitted), the policy triggers strict scrutiny.

### iii.    Jeffco's policy burdens hybrid rights.

*S*trict scrutiny also applies when a free exercise claim is coupled with another "colorable" constitutional claim—such as the parental rights claim discussed below. *Axson-Flynn*, 356 F.3d at 1295–1297 (defining as having a "fair probability or likelihood, but not a certitude, of success on the merits.") Because Plaintiffs couple a colorable parental rights claim with their free exercise claim, strict scrutiny applies.

### B.  Jeffco's policy violates Plaintiff Students' right to bodily privacy.

Student Plaintiffs have "fundamental rights which the State must respect." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969). Among those rights "is a constitutional right to privacy." *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982). Everyone has a "constitutionally protected privacy interest in his or her partially clothed body." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175–76 & n.5 (3rd Cir. 2011); *accord Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (affirming the "right to privacy is now firmly ensconced among the individual liberties protected by our Constitution"); *see also Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2005) (recognizing that students maintain "a significant privacy interest in their unclothed bodies" in the context of a Fourth Amendment search at school).

This "reasonable expectation of privacy" exists "particularly while in the presence of members of the *opposite sex*." *Luzerne Cnty.*, 660 F.3d at 177 (emphasis added). That is because "[t]he two sexes are not fungible." *United States v. Virginia,* 518 U.S.

11

515, 533 (1996) (quoting *Ballard v. United States,* 329 U.S. 187, 193 (1946). For this

reason, our nation has long approved of "separate public restrooms for men and women

based on privacy concerns." *Faulkner v. Jones*, 10 F.3d 226, 232 (4th Cir. 1993).

"[P]rivacy matters" to children and is "central to their development and integrity."

Samuel T. Summers, Jr., *Keeping Vermont's Public Libraries Safe*, 34 Vt. L. Rev. 655,

674 (2010) (internal quotation omitted). Forcing them to share bedrooms and shower

facilities with opposite-sex students risks their "permanent emotional impairment" under

the "guise of equality." *City of Phila. v. Pa. Hum. Relations Comm'n*, 300 A.2d 97, 103

(Pa. Commw. Ct. 1973). And "the presence of unrelated males in [areas] where intimate

bodily functions take place is a cause of stress to females." *Torres v. Wis. Dep't of

Health & Soc. Servs.*, 859 F.2d 1523, 1531 (7th Cir. 1988) (citation omitted).

Jeffco cannot condition educational benefits upon a child's willingness to

surrender their right to privacy. *See Perry*, 408 U.S. at 597. Jeffco's policy demeans

Student Plaintiffs' privacy by pressuring them to sleep, address hygiene needs, shower,

and undress in the presence of the opposite sex. It tramples dignity interests, strips

away modesty and privacy, and leaves them vulnerable in intimate spaces. Because it

infringes on their right to privacy and to be free from compelled exposure to the opposite

sex, strict scrutiny applies. *Reno v. Flores*, 507 U.S. 292, 301–02 (1993).

### C. Jeffco's policy violates Parent Plaintiffs' fundamental right to direct their children's religious upbringing and protect their bodily privacy.

The Fourteenth Amendment "provides heightened protection against government

interference with certain fundamental rights and liberty interests." *Troxel v. Granville*,

530 U.S. 57, 65 (2000) (plurality op.) (quoting *Washington v. Glucksberg*, 521 U.S. 702,

720 (1997). It protects rights that are "objectively, deeply rooted in this Nation's history

and tradition." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239 (2022)

(internal quotation omitted). And it "forbids the government to infringe fundamental

liberty interests at all . . . unless the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721 (cleaned up).

Parents have a fundamental right "to direct the education and upbringing of one's children." *Id.* at 720 (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923) and *Pierce*, 268 U.S. 510 (1925)); *accord Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1202–03 (10th Cir. 2003). It "is perhaps the oldest of the fundamental liberty interests." *Troxel*, 530 U.S. at 65. And it is infringed when the government overrides a parent's right to decide whether their child is exposed to the opposite sex in bedrooms and shower facilities. If a parent's right secures anything, it secures their right to protect their child's (1) bodily privacy and (2) free exercise right to abstain from sharing bedrooms and shower facilities with the opposite sex. It is hard to imagine matters closer to the "heart of parental decision-making authority." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3rd Cir. 2005).

Just as a law can't cede a fit parent's decision-making authority over who visits their child, *Troxel*, 530 U.S. at 67, a school policy can't cede a parent's authority over who shares a bedroom or shower facility with their child. Parents have a right to make these decisions. *Parham v. J. R.*, 442 U.S. 584, 602 (1979) (affirming parents' right to make "life's difficult decisions"). So when a policy, like Jeffco's, "come[s] into conflict with the fundamental right of parents to raise and nurture their child," "the primacy of the parents' authority must be recognized and should yield only where the school's action is tied to a compelling interest." *Gruenke v. Seip*, 225 F.3d 290, 305 (3d Cir. 2000); *see also Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1210-12 (S.D. Cal. 2023).

### D.    Jeffco's policy fails strict scrutiny.

Because Jeffco's policy violates Plaintiffs' constitutional rights, strict scrutiny applies. *Kanuszewski*, 927 F.3d at 419; *Fulton*, 593 U.S. at 541. Jeffco can't prove that

applying its policy to Plaintiffs "furthers a compelling governmental interest" and is "narrowly tailored to that end." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015).

### i. Jeffco lacks a compelling interest to justify the harms.

Jeffco claims two interests. First, it argues that "the policy ensures that all students can fully participate." MTD 9. Jeffco's treatment of Student Plaintiffs undermines that interest. *See Lukumi*, 508 U.S. at 546–47 ("Where government restricts only conduct protected by the First Amendment . . . the interest . . . is not compelling."). Unlike what it offers transgender students, Jeffco has refused to provide Student Plaintiffs with accommodations that allow their full participation before trips. The only option Jeffco gave the Brinkmans added monetary costs and penalized A.G.B. by forcing her to miss part of her Outdoor Lab experience and ostracized her from her classmates. Movant's Appx., p. 5–6 – Brinkman's Dec. The same is true for the Wailes. *Id.* p. 7–8 – Wailes' Decl.

Second, Jeffco claims its interest is avoiding "harms to its transgender students." MTD 9. But accommodating Plaintiffs does not harm any other students. Jeffco can still room transgender students with those who share their gender identity—just not with Student Plaintiffs. Am. Compl. ¶¶ 308–311. Jeffco need only commit to rooming Student Plaintiffs with students Jeffco or Student Plaintiffs know to be of the same sex.

### ii. Jeffco's policy is not narrowly tailored.

The existence of less restrictive options proves that a policy is not narrowly tailored. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 823 (2000). Jeffco can accommodate Student Plaintiffs and protect all students' interests. It could commit to rooming Student Plaintiffs only with students Jeffco or Student Plaintiffs know are of the same sex. Or Jeffco could let all parents choose whether their children will be roomed by gender identity or sex or assert that they have no preference. That way no parents or

students would know which students identify as transgender. This process would further Jeffco's interests by settling these matters *before* students are forced into uncomfortable situations like D.W. experienced. Given the few transgender students, and that many parents don't object to Jeffco's policy, accommodating Student Plaintiffs would pose no problem. The policy fails strict scrutiny.

## III.    Plaintiffs' likelihood of success determines the remaining factors.

Because Plaintiffs are likely to prevail on the merits, the three remaining factors also weigh in their favor. The loss of any of Plaintiffs' constitutional rights—even for a short time—is irreparable harm. *Heideman*, 348 F.3d at 1190. Jeffco's interest in enforcing its policy does not outweigh Plaintiffs' interest in having their "constitutional rights protected." *Awad*, 670 F.3d at 1131–32. And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at 1132 (citation omitted).

Under Fed. R. Civ. P. 65(c), this Court has "wide discretion" in determining "whether to require security." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003). A bond is unnecessary here because Jeffco is unlikely to suffer financial harm, *id.*, and because Plaintiffs seek to enforce their constitutional rights. *Rocky Mountain Gun Owners v. Polis*, 685 F. Supp. 3d 1033, 1061 (D. Colo. 2023).

## CONCLUSION

Plaintiffs respectfully request a preliminary injunction barring Jeffco from assigning Student Plaintiffs to overnight accommodations with the opposite sex.

Respectfully submitted this 7th day of February 2025.


s/ Katherine L. Anderson

Katherine L. Anderson                Noel W. Sterett
AZ Bar No. 33104                     IL Bar No. 6292008
ALLIANCE DEFENDING FREEDOM           Mallory B. Sleight

15

15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
kanderson@ADFlegal.org

David A. Cortman
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road N.E.,
  Suite D1100
Lawrenceville, Georgia 30043
(770) 339-0774
dcortman@ADFlegal.org

NE Bar No. 27129
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
(571) 707-4655
nsterett@ADFlegal.org
msleight@ADFlegal.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2025, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record who are registered users of the ECF system:

Eric R. Olson
Isabel Broer
Bianca E. Miyata
OLSON GRIMSLEY KAWANABE HINCHCLIFF &
MURRAY LLC
700 17th Street, Suite 1600
Denver, Colorado 80202

*Counsel for Defendants*

s/ Katherine L. Anderson

Katherine L. Anderson
AZ Bar No. 33104
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
kanderson@ADFlegal.org

*Attorney for Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(a)**

I hereby certify that Plaintiffs' counsel conferred with Defendants' counsel about the relief requested by this motion in accordance with D.C.COLO.L.CivR 7.1(a), and on February 6, 2025, Defendants' counsel informed Plaintiffs' counsel by email that Defendants oppose the relief requested.

Dated: February 7, 2025          s/ Katherine L. Anderson
                                 Katherine L. Anderson
                                 Arizona Bar No. 033104
                                 ALLIANCE DEFENDING FREEDOM
                                 15100 N. 90th Street
                                 Scottsdale, Arizona 85260
                                 (480) 444-0020
                                 kanderson@ADFlegal.org