# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Regina M. Rodriguez

Civil Action No. 1:24-cv-02439-RMR-NRN

JOSEPH and SERENA WAILES, et al.,

     Plaintiffs,

v.

JEFFERSON COUNTY PUBLIC SCHOOLS and
JEFFERSON COUNTY PUBLIC SCHOOLS
BOARD OF EDUCATION,

     Defendants.

---

# ORDER

---

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 41, and Plaintiffs' Renewed Motion for Preliminary Injunction, ECF No. 48. The Motions are fully briefed and ripe for review. For the reasons set forth below, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is GRANTED and Plaintiffs' Renewed Motion for Preliminary Injunction is DENIED.[1]

---

[1] Given the Court's ruling dismissing the Amended Complaint with prejudice, the Court determines that an evidentiary hearing is unnecessary before ruling on Plaintiffs' Renewed Motion for Preliminary Injunction. *See Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at *3 (10th Cir.1998) ("[Plaintiff] has failed to cite any Tenth Circuit authority that requires a district court to hold an evidentiary hearing prior to granting or denying a preliminary injunction motion . . . . Accordingly, we do not instruct the district court to hold an evidentiary hearing prior to disposition of [Plaintiff's] motion, although the district court is free to do so within its own discretion.").

## I.    BACKGROUND

This Court continues to acknowledge the importance of addressing disputes between parents and public schools in a manner that recognizes the parents' sincere and natural desire to protect their children and public schools' obligation to provide a free and fair education while protecting the rights of all students. The Court incorporates herein the background facts of this case, including its discussion of Jefferson County Public Schools' ("Jeffco") policy, as stated in its prior Order denying Plaintiffs' Motion for Preliminary Injunction. *See* ECF No. 33 at 1−4.

A month after the Court's Order, Plaintiffs filed an Amended Complaint, ECF No. 36, and two months after that, a Renewed Motion for Preliminary Injunction, ECF No. 48. Plaintiffs Daniel and Annette Brinkman and their children, A.G.B. and A.D.B. by and through their parents, joined the lawsuit. Other than this, the main factual difference between the Court's prior Order and now is that all "upcoming trips" previously discussed have already happened. *See* ECF No. 33 at 4. There is also some disagreement between the parties about the reasonableness of the accommodations offered for some of these trips, *compare* ECF No. 48 at 6−8 *with* ECF No. 50 at 7−8, but the fact remains that accommodations were offered and utilized per Jeffco's policy.[2] For example, the Brinkman Plaintiffs chose the option of having their child participate in Outdoor Lab as a day student. *See* ECF No. 36, Am. Compl. ¶¶ 341-42, 368.

---

[2] Regardless of the factual dispute between the parties about the reasonableness of accommodations in the renewed preliminary injunction briefing, the Court's findings with respect to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim renders the dispute moot.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of standing. *Grace Bible Fellowship v. Polis*, No. 23-1148, 2024 WL 1340201, at *2−5 (10th Cir. Mar. 29, 2024). A plaintiff bears the burden of demonstrating standing for each form of relief sought. *W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1296−97 (10th Cir. 2023).

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). A "theory of standing" that "relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (citations omitted).

"Second, there must be a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560 (citation omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision.") (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561; *see also Spokeo*, 578 U.S. at 338.

### 2. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to put forth a set of facts that, if true, would entitle the complainant to relief. *See Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678−79 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124−25 (10th Cir. 2010) (quoting *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, the court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020), *abrogated on other grounds by Garland v. Cargill*, 602 U.S. 406 (2024) (quoting *United States ex rel. Citizen Band*

*Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989)). "To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harms that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Id.* (quoting *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007)); *accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "It is the movant's burden to establish that each of these factors tips in his or her favor." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188−89 (10th Cir. 2003) (citation omitted).

## III.     ANALYSIS

### A.     Plaintiffs Robert and Jade Perlman and their child, M.P., lack standing

Plaintiffs Robert and Jade Perlman and their child, M.P., (collectively, the "Perlmans") lack standing to assert any of the claims pled in this case. In order to have standing, Plaintiffs must have suffered an injury in fact. Here, the Perlmans have not alleged any past injuries and cannot show that any alleged future injury is certainly impending or that there is a substantial risk injury will occur. Instead, the Perlmans argue that M.P. "has been told by the coach that she will also play some varsity games" and "[t]he team travels for tournaments that require overnight stays." ECF No. 36, Am. Compl. ¶ 222. The Perlmans fail to allege that any overnight trips occurred or that M.P. was allegedly injured on any trips and, as already ruled by this Court, potential overnight stays next school year are not sufficient to allege a future injury that is certainly impending or

that has a substantial risk of occurrence. *See* ECF No. 33 at 7−8. Therefore, the Perlmans have not alleged anything new in the Amended Complaint that remedies their previous standing issues and are dismissed from this case for lack of standing.

**B.      The remaining Plaintiffs' claims are dismissed with prejudice**

The remaining Plaintiffs'[3] claims are dismissed with prejudice[4] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. While parents may have the right to instill moral and religious values in their children, parents have no right to replace public education with their own personal views nor a right to control each and every aspect of their children's education and oust the state's authority over that subject.

**1.      Substantive Due Process Claims (Counts I and III)**

> *a.      Count I - Fourteenth Amendment parental right to direct the care, education, and upbringing of their children*

The Fourteenth Amendment's Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted). The Supreme Court has held that one such fundamental liberty interest protected by the Due Process Clause of

---

[3] Defendants did not challenge the remaining Plaintiffs' standing. *See* ECF No. 41 at 9−11.

[4] The Court finds that because Plaintiffs fail to state a claim in their Amended Complaint as explained in this Analysis Section III.B., Plaintiffs' complaint cannot be saved by further amendment, and granting leave to amend a second time would therefore be futile. Thus, the Court dismisses Plaintiffs' claims with prejudice. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile."); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

the Fourteenth Amendment is "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *see also Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 933 (10th Cir. 2025); *Parents for Privacy v. Barr*, 949 F.3d 1210, 1222−23, 1229 (9th Cir. 2020), *cert. denied* 141 S. Ct. 894 (2020); *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204−05 (9th Cir. 2005). Among other things, this right means that

> the state cannot prevent parents from choosing a specific educational program—whether it be religious instruction at a private school or instruction in a foreign language. That is, the state does not have the power to "standardize its children" or "foster a homogenous people" by completely foreclosing the opportunity of individuals and groups to choose a different path of education.

*Fields*, 427 F.3d at 1205 (quoting *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 533–34 (1st Cir. 1995) (upholding compulsory high school sex education assembly program)); *see also Barr*, 949 F.3d at 1229.

This freedom, however, does not "encompass[ ] a fundamental constitutional right to dictate the curriculum at the public school to which [parents] have chosen to send their children." *Barr*, 949 F.3d at 1229 (quoting *Fields*, 427 F.3d at 1205); *see also Fields*, 427 F.3d at 1209 (holding that "neither education itself nor the legitimate functions of a public school are limited to the curriculum . . . . Such a view construes too narrowly the aims of education and fails to recognize the unique role that it plays in American society"). It is unclear whether Plaintiffs are seeking to change or eliminate the Jeffco policy,[5] but regardless, the case law precludes their right to do so.

---

[5] The Court pointed out in its previous Order denying Plaintiffs' original motion for a preliminary injunction, "Plaintiffs specifically represent that this narrow request 'does not ask this Court to order [Jeffco] to

As the Tenth Circuit explained:

> But the scope of that right has limits. For example, parents have no right to "replace state educational requirements with their own idiosyncratic views of what knowledge a child needs to be a productive and happy member of society[.]" *Runyon v. McCrary*, 427 U.S. 160, 177 (1976) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 239 (1972) (White, J., concurring)). And our court has ruled that a parent doesn't have "a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject." *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist. No. I-L,* 135 F.3d 694, 699 (10th Cir. 1998).

*Lee*, 135 F.4th at 933.

In the First Count of their Amended Complaint, Plaintiffs specifically allege that their parental right includes "the right to instill moral and religious values in their children on topics like a child's identity as a male or female, a child's bodily privacy, sexual modesty, and interactions with the opposite sex." ECF No. 36, Am. Compl. ¶ 419. Plaintiffs further argue that their parental right includes "the right to protect their children from violation of their bodily privacy by exposure to the opposite sex in intimate settings, like overnight accommodations and shower facilities." *Id.* ¶ 420. Plaintiffs also argue that it includes "the right to determine (1) whether their children should expose, or risk exposing, their bodies or intimate activities to the opposite sex, and (2) whether their children should be exposed, or risk being exposed, to the bodies or intimate activities of the opposite sex." *Id.* ¶ 421.

Courts that have addressed transgender students' access to school bathrooms and locker rooms, which are analogous to bunkhouses and hotel rooms, have roundly

---

change their district-wide policy . . . .'" ECF No. 33 at 2 (quoting ECF No. 21 at 1, Pls.' Resp. in Opp. to Defs.' Emergency Mot. for Limited Expedited Discovery). Plaintiffs do not appear to explicitly limit their request for relief as such in their Amended Complaint (ECF No. 36) or their Renewed Motion for Preliminary Injunction (ECF No. 48).

rejected that there is a fundamental parental right at issue. *See Barr*, 949 F.3d at 1229−32 (explaining that parents' right to direct their children's upbringing and education meant that the parent plaintiffs "ha[d] a right to remove their children from [the school] if they disapprove of transgender student access to facilities," but it did not include a right "to direct school administration more generally" or to direct the school's bathroom and locker room policy); *see also*, *e.g.*, *Doe No. 1 v. Bethel Local Sch. Dist. Bd. of Educ.*, No. 3:22-cv-337, 2023 WL 5018511, at *11−14 (S.D. Ohio Aug. 7, 2023), *appeal pending*, No. 23-3740 (6th Cir.).

Thus, while parents may have the right to instill moral and religious values in their children on topics like a child's gender identity, sexual modesty, and interactions with the opposite sex at home, they have no right to dictate Jeffco's curriculum around these issues and its efforts to ensure that transgender students are part of an educational environment where all students feel safe and ready to learn. Nothing about Jeffco's policy prohibits parents from teaching their children certain values. As held by the Tenth Circuit, parents have no right to replace public education with their own personal views nor a right to control each and every aspect of their children's education and oust the state's authority over that subject. *See Lee*, 135 F.4th at 933. Further, in Colorado District Court, Judge Nina Y. Wang and Magistrate Judge N. Reid Neureiter have similarly disposed of parental rights claims when parents have challenged school districts' LGBTQ-inclusive policies. *Lee v. Poudre Sch. Dist.*, No. 23-cv-1117-NYW-STV, 2023 WL 8780860, at *4−12 (D. Colo. Dec. 19, 2023); *Jones v. Boulder Valley Sch. Dist. RE-2*, No. 20-cv-3399-RM-NRN, 2021 WL 5264188, at *11−22 (D. Colo. Oct. 4, 2021).

9

Requiring implementation of Plaintiffs' views on sex and gender identity at Jeffco at the expense of making a transgender student feel unsafe or unwelcomed in an educational environment falls outside the fundamental right to direct the care and upbringing of one's child. Moreover, Plaintiffs have the option under the Jeffco policy to coordinate alternative accommodations that would make their children feel more comfortable, if their children indeed share the beliefs of their parents about sex and gender identity. The Jeffco policy does not only offer accommodations for transgender students, as Plaintiffs allege.[6]

The Court therefore concludes that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and dismisses Count I with prejudice.

> b. *Count III - Fourteenth Amendment student right to bodily privacy*

"The Supreme Court has recognized that 'one aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.'" *Barr*, 949 F.3d at 1222 (quoting *Carey v. Population Servs. Int'l,* 431 U.S. 678, 684 (1977)). "This right includes 'at least two constitutionally protected privacy interests: the right to control the disclosure of sensitive

---

[6] Though courts generally only consider facts alleged in the complaint in assessing the complaint's sufficiency, it is, on occasion, proper to look beyond the complaint. *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1158 (10th Cir. 2018). A court "may consider 'documents that the complaint incorporates by reference,' 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,' and 'matters of which a court may take judicial notice.'" *Id.* (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Here, the Court considers documents attached as exhibits to the Amended Complaint because the Amended Complaint refers to them, they are central to Plaintiffs' claims, and Jeffco does not dispute their authenticity. *See*, *e.g.*, ECF No. 36, Am. Compl. ¶ 261 (citing and linking to Jeffco's policy, Ex. A to Am. Compl.).

information and the right to 'independence [in] making certain kinds of important decisions.'" *Id.* (citing *Fields*, 427 F.3d at 1207 (quoting *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); citing *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1153 (9th Cir. 2012)). However, there is no Fourteenth Amendment fundamental privacy right to avoid all risk of intimate exposure to or by a transgender person who was assigned the opposite biological sex at birth. *Barr*, 949 F.3d at 1217.

> As explained in *Parents for Privacy v. Barr*, there is no support in the case law that
>
> students have a fundamental right not to share restrooms and locker rooms with transgender students who have a different assigned sex than theirs . . . [t]hus, because [t]he potential threat that a high school student might see or be seen by someone of the opposition biological sex while either are undressing or performing bodily functions in a restroom, shower, or locker room does not give rise to a constitutional violation, . . . [and] Plaintiffs failed to state a claim for violation of the Fourteenth Amendment.

949 F.3d at 1223 (internal quotation marks and citations omitted).[7]

In their Third Count of the Amended Complaint, Plaintiffs specifically allege that their children have the right of bodily privacy to be protected from exposing their bodies "or intimate activities" to the opposite sex and, in turn, from being exposed to the body or "intimate activities" of the opposite sex. ECF No. 36, Am. Compl. ¶¶ 499−500. Plaintiffs further allege, "[a] government that compels its citizens to disrobe or attend the intimate

---

[7] By way of contrast in other privacy cases, the Ninth Circuit in *York v. Story*, 324 F.2d 450, 452 (9th Cir. 1963), determined that a male police officer violated a female victim's right to bodily privacy by taking unnecessary nude photographs of her in provocative positions and circulating them to other officers. Similarly, the Ninth Circuit in *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415 (9th Cir. 1992), determined that a male parole officer violated a female parolee's right to bodily privacy by entering her bathroom stall over her objections and remaining in the stall while she finished urinating, cleaned herself, and dressed. In this case, Plaintiffs do not allege that anyone is taking nude photographs of their children or are taking overt steps to invade their bodily privacy.

11

activities in the presence of the opposite sex" violates their children's sense of self-respect and personal dignity. *Id.* ¶¶ 501−02. However, this mischaracterizes Jeffco's policy. It does not require anyone to disrobe in front of anyone else. Nor does it even require that Plaintiffs be in the restroom at the same time as other students, such as is the case with locker rooms in school gyms.

Jeffco affords Outdoor Lab participants privacy in the bunkhouses. Students sleep in single-occupancy bunks. *See* ECF No. 36-3 at 11−13, Am. Compl., Ex. C; ECF No. 32 at 24, Pls.' Supp. Appx. at 22.[8] The bunkhouses have private changing spaces. *Id.* Restroom and shower stalls are single-occupancy and have doors or thick, long privacy curtains. ECF No. 36-3 at 14, Am. Compl., Ex. C; ECF No. 32 at 24, Pls.' Supp. Appx. at 22. Therefore, the Outdoor Lab goes even further in the way of privacy than school bathrooms and locker rooms, for which courts have found that students do *not* have a fundamental right to privacy. Put plainly, Plaintiffs' children are neither being exposed to transgender students or counselors nor are they exposing themselves to transgender students or counselors. And if these arrangements are not satisfactory for any reason, students are not required to stay overnight; they can attend as day students. Indeed, the Brinkman Plaintiffs requested and received this option. *See* ECF No. 36, Am. Compl. ¶¶ 341−42, 368.

---

[8] For the same reasons articulated in *supra* fn. 6, the Court considers certain documents in Plaintiffs' originally filed Appendix (ECF No. 15-1) to their original Motion for Preliminary Injunction, Plaintiffs' Supplemental Appendix (ECF No. 32) to their Reply in Support of their original Motion for Preliminary Injunction, and Plaintiffs' Appendix (ECF No. 48-1) to their Renewed Motion for Preliminary Injunction. Further, the Amended Complaint describes letters Plaintiffs' counsel exchanged with Jeffco. Am. Compl. ¶¶ 287-98. Those letters are in Plaintiffs' Supplemental Appendix (ECF No. 32) and the Court may properly consider them.

Additionally, Plaintiffs assume someone at Jeffco, or anyone else for that matter, would have knowledge in each instance of a student's sex or gender assigned at birth. This is inconsistent with Colorado law. Contrary to Plaintiffs' suggestions, Jeffco does not knowingly assign students of different sexes assigned at birth to share a bed. ECF No. 32 at 14, Pls.' Supp. Appx. at 12. And Jeffco does not necessarily know the sex assigned at birth of every student. While Jeffco maintains a record of each student's "legal gender," *id.* at 23−24, a family can have a student's legal gender changed under state law and have a new birth certificate issued, *id.* at 23 (citing C.R.S. § 25-2-113.8(3)(a)).

The Court therefore concludes that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and dismisses Count III with prejudice.

### 2.    First Amendment Free Exercise Claims (Counts II and IV)

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const., amend. I. "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990), *superseded by statute in other contexts as stated in Holt v. Hobbs*, 574 U.S. 352, 356−57 (2015). The Supreme Court has explained that "the First Amendment obviously excludes all 'governmental regulation of religious *beliefs* as such,'" meaning that "[t]he government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in

controversies over religious authority or dogma." *Id.* (emphasis in original) (citations omitted).

The Supreme Court has also suggested that the government would interfere with the free exercise of religion impermissibly if it sought to ban the performance of or abstention from certain physical acts, but "only when [those acts] are engaged in for religious reasons, or only because of the religious belief that they display." *Id.* Nevertheless, the "freedom to act" pursuant to one's religious beliefs "cannot be" absolute; "[c]onduct remains subject to regulation for the protection of society." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1128 (9th Cir. 2009) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940)). Thus, "[t]he right to freely exercise one's religion . . . does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his [or her] religion prescribes (or proscribes)." *Id.* at 1127 (internal quotation marks and citations omitted).

In Count II, Parent Plaintiffs claim that they "have a sincere religious belief that they must teach their children to practice modesty and protect their children's modesty[, which] requires that their children not undress, use the restroom, shower, complete other intimate activities, or share overnight accommodations with any non-family member of the opposite sex." ECF No. 36, Am. Compl. ¶ 462. They also allege that they "believe that a person's sex is binary and fixed at conception" and "do not believe people can change their sex." *Id.* ¶ 464. In Count IV, Student Plaintiffs claim that they have "sincerely held religious beliefs [which] require them to avoid intimate exposure, or the risk of intimate

exposure, to the body or intimate activities of someone of the opposite sex." *Id.* ¶ 533. They allege their "beliefs require that they not undress, use the restroom, shower, complete other intimate activities, or share overnight accommodations with the opposite sex." *Id.* ¶ 534.

"[N]eutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment because they need only be rationally related to a legitimate government interest." *Barr*, 949 F.3d at 1234 (internal quotation marks and citations omitted). "[N]eutrality and general applicability are considered with respect to religion rather than with respect to the person or groups to which the law most directly pertains." *Id.* (internal quotation marks and citations omitted).

In this case, Jeffco's policy is neutral and generally applicable with respect to religion and, therefore, does not violate Plaintiffs' First Amendment rights. It does not force any Plaintiff to embrace a religious belief and does not punish anyone for expressing their religious beliefs. Moreover, it does not "proceed[ ] in a manner intolerant of religious beliefs or restrict[ ] practices because of their religious nature." *Fulton v. City of Philadelphia, Pa.*, 593 U.S. 522, 533 (2021) (citations omitted). Further, it applies to all students,[9] does not require Jeffco to "consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" and does not "prohibit[]

---

[9] Jeffco's policy is even more obviously generally applicable than the policy in *Students for Privacy v. Barr*. In *Barr*, the student safety plan itself stated that it was "created to support a transgender male expressing the right to access the boy's locker room at Dallas High School" and in "response to the threat of [federal] enforcement action." 949 F.3d at 1235. In this case, Jeffco's policy is designed "to foster an educational environment that is safe and free from discrimination for all students" and reflects state and federal law. ECF No. 36, Am. Compl., Ex. A at 1; ECF No. 32 at 14−16, Pls.' Supp. Appx. at 12−14.

religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 533−34 (citations omitted).

In fact, Jeffco makes no reference to any religious practice, conduct, belief, or motivation whatsoever. *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 (9th Cir. 2015). Jeffco instead assigns overnight rooms based on a neutral policy and allows any student to request accommodations for any reason. Jeffco does not evaluate accommodation requests as worthy or give employees discretion to reject requests based on the reasons for the requests, making Jeffco's policy neutral and generally applicable. *See* ECF No. 36, Am. Compl. ¶¶ 342, 368 (two district leaders separately offering the Brinkman Plaintiffs daytime-only participation in Outdoor Lab in response to their concerns); *see also Legacy Church, Inc. v. Kunkel*, 472 F. Supp. 3d 926, 987 (D.N.M. 2020) (finding public health orders neutral and generally applicable in part because they did not allow for state officials' "subjective determinations or judgments regarding the genuineness or value of specific religious beliefs") (citation omitted).

Because Jeffco's policy is neutral and generally applicable, rational basis review applies. *Chiles v. Salazar*, 116 F.4th 1178, 1225 (10th Cir. 2024). Jeffco's policy is rationally related to a legitimate government purpose: fostering an educational environment where all students are safe and included so that they can learn. *See* ECF No. 36, Am. Compl., Ex. A. at 2; *Barr*, 949 F.3d at 1238 (finding a "legitimate purpose of protecting student safety and well-being, and eliminating discrimination on the basis of sex and transgender status").

Even assuming that Jeffco's policy posed a risk of the alleged constitutional violations, which it does not, the Court finds that Jeffco's policy is narrowly tailored to satisfy strict scrutiny. For example, in *Doe by and through Doe v. Boyertown Area Sch. Dist.*, the Third Circuit recognized that cisgender plaintiffs may experience a certain level of stress due to transgender students' presence in school facilities, but that stress was not "comparable to the plight of transgender students who are not allowed to use facilities consistent with their gender identity." 897 F.3d 518, 523 (3rd Cir. 2018). The Third Circuit found that the school district's policy served "a compelling state interest in not discriminating against transgender students" and was narrowly tailored to that interest. *Id.* at 528. *See also Parents for Privacy v. Dallas Sch. Dist. No. 2*, 326 F. Supp. 3d 1075, 1100−01 (D. Or. 2018).

As explained by the Third Circuit:

[T]ransgender students face extraordinary social, psychological, and medical risks and the School District clearly had a compelling state interest in shielding them from discrimination. There can be no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity. The risk of experiencing substantial clinical distress as a result of gender dysphoria is particularly high among children and may intensify during puberty. The Supreme Court has regularly held that the state has a compelling interest in protecting the physical and psychological well-being of minors. We have similarly found that the government has a compelling interest in protecting and caring for children in various contexts. Mistreatment of transgender students can exacerbate gender dysphoria, lead to negative educational outcomes, and precipitate self-injurious behavior. When transgender students face discrimination in schools, the risk to their wellbeing cannot be overstated—indeed, it can be life threatening. This record clearly supports the District Court's conclusion that the School District had a compelling state interest in protecting transgender students from discrimination.

Moreover, the School District's policy fosters an environment of inclusivity, acceptance, and tolerance. As the appellees' amicus brief from the National

17

> Education Association convincingly explains, these values serve an important educational function for both transgender and cisgender students. When a school promotes diversity and inclusion, classroom discussion is livelier, more spirited, and simply more enlightening and interesting [because] the students have the greatest possible variety of backgrounds. Students in diverse learning environments have higher academic achievement leading to better outcomes for all students. Public education must prepare pupils for citizenship in the Republic, and inclusive classrooms reduce prejudices and promote diverse relationships which later benefit students in the workplace and in their communities. Accordingly, the School District's policy not only serves the compelling interest of protecting transgender students, but it benefits all students by promoting acceptance.

*Id.* at 528−29 (internal quotation marks and citations omitted).

The Court finds that the compelling state interest described by the Third Circuit also applies to fostering a non-discriminatory, safe, and inclusive environment at Jeffco schools and in school-sponsored outside activities like Outdoor Lab and sports tournaments. Further, the *Doe* court found a general locker room policy was narrowly tailored, whereas the appellants contended that a more tailored solution was to provide single-user accommodations for all students. *Id.* at 530. While the Third Circuit roundly rejected this unpersuasive argument, which "fail[ed] to comprehend the depths of the problems the School District's policy was trying to remedy or the steps taken to address them," *id.*, the situations in this case do provide for single-use privacy. The bunkhouses have private changing spaces and the restroom and shower stalls are single-occupancy and have doors or thick, long privacy curtains. ECF No. 32 at 24, Pls.' Supp. Appx. at 22; ECF No. 36-3, Am. Compl., Ex. C at 14. Therefore, the Outdoor Lab goes even further in the way of privacy than school bathroom and locker rooms, for which courts (like the Third Circuit in *Doe*) have found that students do *not* have a fundamental right to privacy.

18

Moreover, it is common knowledge that hotel rooms have bathrooms with doors for privacy during sports travel. Just as in *Doe*, Jeffco's policy is narrowly tailored to meet its compelling state interest.

The Court therefore concludes that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and dismisses Counts II and IV with prejudice.

### C.     Plaintiffs' Renewed Motion for Preliminary Injunction is Denied

To obtain a preliminary injunction, the movant must show that it has a substantial likelihood of success on the merits. *Aposhian*, 958 F.3d at 978. "The moving party has the burden to demonstrate they are entitled to a preliminary injunction" and "[w]hile it is not necessary that plaintiffs prove their likelihood of success beyond all doubt, plaintiffs must show a reasonable probability they will ultimately be entitled to the relief sought on the merits." *Speight v. Gordon*, 582 F. Supp. 3d 897, 903 (D. Wyo. 2022) (citing *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998); *Cont'l Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 781 (10th Cir. 1964) (per curiam)). "They must show more than a mere possibility of success on the merits." *Id.* (citation omitted). Further, a movant for a preliminary injunction must show irreparable harm if the injunction is denied. *Aposhian*, 958 F.3d at 978.

Given this Court's ruling dismissing the Amended Complaint, ECF No. 36, with prejudice, it is clear that Plaintiffs cannot succeed on the merits, let alone have a substantial likelihood of success on the merits. Further, Plaintiffs have shown no irreparable injury, as their alleged fundamental constitutional rights are not violated in this

case. *See supra* Sect. III. The Court therefore denies Plaintiffs' Renewed Motion for Preliminary Injunction, ECF No. 48.

## IV.    CONCLUSION

For the foregoing reasons, it is

ORDERED that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 41, is GRANTED and Plaintiffs' Amended Complaint, ECF No. 36, is DISMISSED with prejudice. It is

FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiffs' Complaint, ECF No. 34, is DENIED as moot. *See Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."); *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019) (stating that any motion to dismiss directed at a superseded pleading is moot). It is

FURTHER ORDERED that Plaintiffs' Renewed Motion for Preliminary Injunction, ECF No. 48, is DENIED.

DATED: August 7, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

20